## GENERAL COURT, MAY TERM, 1804.

### JARRETT's Lessee *vs.* WEST.

EJECTMENT for the following tracts of land, viz. *Contestable Manor No.* 1, containing 1302 acres; *Contestable Manor No.* 2, containing 144 acres; *Jarrett's Disappointment*, containing 115½ acres; and *Little Contestable Manor*, containing 200 acres; all lying in *Harford* county. The defendant took defence on warrant, and plots were made and returned. At October term 1803, the cause came on for trial, when a jury was sworn.

1. It appeared by the plots that the defendant took defence for the tract of land called *Jarrett's Disappointment.* The dispute was as to the beginning of a tract of land called *The Hills of Poverty,* which tract was located on the plots by the defendant. The plaintiff claimed *Jarrett's Disappointment,* as being included within the lines of *Contestable Manor No.* 2, which last mentioned tract was located differently by the parties. By the plaintiff's location a great part of *Jarrett's Disappointment* was included within the lines of *Contestable Manor No.* 2; but by the location made by the defendant it was entirely excluded. The plaintiff had not counterlocated *The Hills of Poverty* on the plots, within which tract the defendant contended *Contestable Manor No.* 2 lay, and which did not contain any part of *Jarrett's Disappointment.* The plaintiff contended that *The Hills of Poverty* included within its lines both tracts, *Contestable Manor No.* 2 and *Jarrett's Disappointment,* according to the locations of both the plaintiff and the defendant. But there was no location made on the plots of *The Hills of Poverty* showing that those tracts were so included.

A location made on the plots by one of the parties in an action of ejectment, and not counterlocated by the other, is presumed to be admitted, and no evidence can be received against it

A patent issued by the judge of the land office under a presumption that only certain lands are included in it, is good for so much of the said lands as are properly included

The locations made by one of the parties in an action of ejectment, on a plot in another cause in which the other party was not interested, may be given in evidence against the party making them

Information, as to the boundary of a tract of land, derived from a person who was interested at the time, is not competent evidence in an action of ejectment for the party claiming under the person so interested

MAY 1804.

Jarrett
vs.
West

*Mason*, for the defendant, prayed the court to direct the jury, that as the plaintiff had not given any counterlocation on the plots of *The Hills of Poverty*, the jury were to presume that the plaintiff admitted the location of that tract as made by the defendant, and that no evidence can be received against that location.

CHASE, Ch. J.　Where parties are contesting respecting the bounds of land, if a location is made by one party, and not denied or counterlocated by the other, the location is presumed to be admitted, and the party is bound by it.　It appears therefore by the plots, that the plaintiff admitted his lands not to be included within *The Hills of Poverty* by the locations which he has made.

*Johnson*, for the plaintiff, moved for leave to withdraw a juror for the purpose of amending the plots; which was granted, and the cause continued.

The plots being amended, the case came on again for trial at this term, May 1804, when

A patent issued by the judge of the land office under a presumption that only certain lands are included in it, is good for so much of the said lands as are properly included

2. *Hollingsworth*, for the defendant, read various orders made by the chancellor, as judge of the land office, on sundry certificates made on a survey of *Contestable Manor*, which are stated in the case of *West's Lessee vs. Hughes*, (*Ante* 7.)　He said the last order of the chancellor, which states that a patent might issue to *Jarrett*, the lessor of the plaintiff, on his recorrected certificate of survey of *Contestable Manor*, and that the certificate should be received of a certain day, was done under the idea that *Jarrett* had not included in his certificate of survey any land prohibited by the previous orders of the chancellor. But that by the plaintiff's own shewing upon the plots in this cause, lands which ought not to have been included, had been included by *Jarrett* in his certificate. That as *Jarrett* had not complied with the chancellor's order, the certificate should not be considered as returned on the day mentioned in the order.

CHASE, Ch. J. It cannot affect the land properly included within the certificate of survey of *Contestable Manor*, which had been comprehended within the patent of *The Hills of Poverty*; nor can it affect the question of relation decided in the case of *West's Lessee vs. Hughes*.

3. *Martin*, (Attorney General,) for the plaintiff, offered in evidence to the jury a plot, with the locations thereon, made upon a caveat in the land office, between *Abraham Jarrett*, brother of the lessor of the plaintiff, and the present defendant, which plot had been exhibited and filed in the court of chancery in a cause then depending in that court between the parties in the present action, and carried, on appeal, to the court of appeals. This plot, he said, he offered in evidence to show, how the brother of the lessor of the plaintiff, owner of the adjoining lands, and the defendant, had located the lands now in dispute upon that plot, being different from the locations now made by the defendant upon the plots in this cause. This court, he said, had repeatedly decided, that an old plot of the same lands, though not made between the same parties, may be given in evidence in any suit where the locations of the lands were in controversy. That it was to have such weight as the jury might think it was entitled to. He cited *Hawkins's Lessee vs. Middleton and Beane*, decided at May term 1785, *(a,)* and *Reeves vs. Middleton, (2 Harr. & M·Hen. 414.)*

*The locations made by one of the parties in an action of ejectment, on a plot in which the other party were not interested; may be given in evidence against he party making them*

*(a)* The case of *Hawkin's Lessee vs. Middleton and Beane*, is in part reported in 2 *Harr & M·Hen.* 119. It was an action of *ejectment* for a tract of land called *Blew Plain*, otherwise called *Beau Plain*, lying in *Prince George's* county. The defendant took defence on warrant, and plots were made, and the cause was tried in the general court at May term 1785. The plaintiff at the trial produced a certificate of survey and grant of the land and gave in evidence the will of *Giles Blizzard*, by which he devised the said land to his wife *Mary*, in fee, who afterwards intermarried with *James Smallwood*; also a deed from said *Smallwood*, and his said wife, to *John* and *Ann Fraser*, for the said land; and that after the death of the said *Smallwood*, the said *Mary*, his widow, together with *John*, and *Ann Fraser* his wife, executed a deed of the land to *Mary Fraser*, who was the grand daughter of the said *Mary Smallwood*, and who afterwards intermarried with *William Magruder*. who, together with the said *Mary* his wife, conveyed the said land to *George Fraser* son and heir of the said *John Fra-*

*A plot and proceedings in an ancient action of ejectment between parties under whom the lessor of the plaintiff in another action of ejectment claims, admitted in evidence for the defendant in such other action, to prove his location of the land on the plots.*

MAY 1804.

Jarrett
vs
West.

*Hollingsworth,* for the defendant, contended that the locations made upon the plot offered in evidence, were mere adverse locations of *the other day.* He admitted that an *old plot* may be given in evidence as traditionary testimony of long standing; but that this plot could not be considered as an old one, being of a recent date.

CHASE, Ch. J.   The court are of opinion, that the plot and locations may be given in evidence, so far as the locations were made by the defendant in this cause, or by his directions.   But the other locations made by *Abraham Jarrett,* or by his directions, cannot be admitted in evidence to the jury.   The evidence is admitted on the same principle as evidence of what the defendant did, and the jury are to judge of its effect.

The court do not recollect decisions carrying the principle so far as to say an old plot may be given in evidence generally, to shew all the locations made by parties who are not parties to the suit at bar.

Information, as to the boundary of a tract of land, derived from a person who was interested at the time, is not competent evidence in an action of ejectment for the party claiming under the person so interested

4. It was admitted that the land located upon the plots in this cause, called *The Hills of Poverty,* in the various positions in which the same is located, lies within the Lord Proprietary's reserves of land in that part of the then county of *Baltimore,* which lands were not liable to be affected in the ordinary way of taking up vacant lands.   The plaintiff in order to make title to the lands mentioned in the declaration, produced and read to the jury a certificate of survey made by the surveyor of *Harford* county, for and at the instance of *Abraham Jarrett,* deceased, father of the lessor of the plaintiff, for the said land called *The Hills of Poverty,* bearing date in February 1771.   He

*ser,* and *Ann* his wife, and uncle of the lessor of the plaintiff, and which said *George* devised the said land to the lessor of the plaintiff in fee.   The defendant to prove his location of the said land on the plots, offered in evidence the proceedings and plots in an action of *ejectment* commenced in the year 1736, by the said *William Magruder,* and *Mary* his wife, against *John Fraser.*   To which plot and proceedings the plaintiff objected:   BUT THE COURT, *(Harrison,* Ch. J.) was of opinion, that the same were proper evidence, and accordingly permitted the same to be read. The Plaintiff excepted.

also proved to the jury, that the lessor of the plaintiff is the eldest son and heir at law of the said *Abraham Jarrett,* who died before the year 1785, as to these lands, intestate. That in the year 1785, under the then existing laws, the lessor of the plaintiff claimed from the intendant of the revenue a right of pre-emption to the land called *The Hills of Poverty.* That he claimed such right of pre-emption as heir at law of his said father, and in virtue of the said certificate of survey, which right of pre-emption was allowed to him by the intendant of the revenue, and thereupon he became the purchaser of the said land from the state. He then produced evidence to prove that in or about the year 1785, the lessor of the plaintiff purchased of the intendant of the revenue the land included in the said survey called *The Hills of Poverty.* That in consequence of that sale a survey was made, and a certificate returned, bearing date the 22d of January 1789, of the land he had purchased. That the said certificate was caveated, and an order passed to correct it. That different caveats were entered against a patent issuing for the said land, and that the chancellor, as judge of the land office, made different orders, until the 20th of December 1797, when a patent issued to the lessor of the plaintiff, as appears by the said certificate of the 22d of January 1789. For the orders and entries made thereon, and the several certificates and orders made afterwards, and for the patent, see *West's Lessee vs. Hughes, (Ante 7,)* before referred to. The plaintiff then, to prove the true beginning of *The Hills of Poverty,* produced and swore to the jury, *Robert Amos,* who deposed that in the year 1771, 1772, or 1773, he happened in company with the said *Abraham Jarrett* at the house of *Benjamin Richardson,* now deceased, when being asked where the beginning of *Jarrett's* survey called *The Hills of Poverty* was, *Benjamin Richardson,* pointing with his hand said, "it is over there on the back of my plantation, and between it and *Indian Will's Cabin Branch;*" that the said *Abraham Jarrett* then observed to the said *Amos,* that he, *Jarrett,* would go and shew him, *Amos,* where the

beginning was; that they, *Jarrett* and *Amos*, and no other person with them, rode in the direction to which *Richardson* had pointed, when *Jarrett* took *Amos* to several marked oaks, which he *Jarrett* told. *Amos* was the beginning of his survey called *The Hills of Poverty*. That the trees were at that time newly marked, and were marked as boundaries usually are, and stood on the east side of *Indian Will's Cabin Branch*, about a quarter of a mile, perhaps something less, from the branch, and between it and *Richardson's* then plantation. *Amos* further proved that no other person ever showed him the said beginning, except as above stated, and that he hath no other knowledge of it. He also deposed, that on the morning of the day on which he derived the said information from *Richardson* and *Jarrett*, and before *Richardson* pointed out and showed in what direction the said beginning was, as above stated, both *Richardson* and *Jarrett* informed him, *Amos*, that he *Richardson* was interested in the survey called *The Hills of Poverty*, and was to have part of the land included in the said survey. *Amos* further proved, that he was present when the said *Jarrett* contracted with *Robert Eden*, esquire, the governor of the then province of *Maryland*, for the land mentioned in the said survey, that by the contract *Jarrett* was to be the purchaser of the lands, and that he was to have the same at a price not exceeding £10 sterling money per 100 acres, but that it was stipulated by the governor that the contract should not be entered on the books, or made public, lest it should injure the sale of the other reserved lands in that neighbourhood. He further deposed, that at the place so shown to him by *Jarrett* as the beginning of *The Hills of Poverty*, there is, at this time, no tree, the land being cleared and in cultivation, but that the trees so shown by *Jarrett* did stand, when so shown, at the place designated, on the plots in this cause, by the plaintiff.

*Hollingsworth*, for the defendant, then prayed the court to direct the jury, that the evidence so given by the said *Amos*, of information by him derived from the said *Richardson* and *Jarrett*, was wholly incompe-

tent in law, as proceeding from interested persons, and ought to be wholly disregarded by the jury. He cited the case of *Colston vs. Nicols,* (*Ante* 105.)

CHASE, Ch. J. It appears that the father of the lessor of the plaintiff had a right of pre-emption in the tract of land called, *The Hills of Poverty,* under the Lord Proprietary, which the state afterwards recognised. That he and *Richardson* both declared to the witness, that they were interested in the land, and declared each other interested at the time. The evidence as being derived from them is not proper to go to the jury.

In the case of *Colston vs. Nicols,* decided in this court on the eastern shore, the witness declared he was not interested at the time of the fact, but had become so *since.* This court decided that his declarations of interest should not deprive the party of his right to his evidence; but this decision was overruled by the court of appeals.

VERDICT FOR THE DEFENDANT.